## Case No. 391.

### The ANGLIA.

### The SCOTIA.

[Blatchf. Prize Cas. 566.][1]

District Court, S. D. New York. Oct., 1863.

PRIZE—VESSELS ENTITLED TO SHARE IN—PRACTICE—PRESUMPTIONS.

1. The proper practice suggested on references to ascertain what vessels are entitled to share in a prize.

2. The right to all prize captures vests primarily in the government; and individuals derive no benefit from them, except by means of positive grant from the public authority.

3. Every vessel of a blockading squadron is bound to do all in its power in the service to be performed, and the law presumes that that obligation is fulfilled, unless the contrary be proved.

4. A rule is different with respect to joint associations or enterprises for war purposes by privateers or cruisers owned by individuals.

5. The doctrine of reasonable or equitable reward has no place in an inquiry as to the distribution of prize money to national vessels under the statutes on that subject.

6. The single fact that a vessel is one of a common force does not constitute her a participant in the prize shares obtained by the separate members of the force.

7. It must also be shown that the vessel was "in sight" or "within signal distance" of the occurrence out of which the taking of the prize was realized.

8. She must have been so situated as to be able, of her own accord, to contribute direct assistance to the captors by deterring the enemy from resistance, or by aiding physically in overcoming such resistance; and the vessel to be aided must have possessed the means of communicating intelligent directions to the one whose aid was needed.

9. The acts of congress on the subject contemplate that the vessels should be in view of each other in order to correctly receive and respond to the signals given.

10. Under those acts, a vessel, in order to be entitled to share in the proceeds of prize property, must show that she was within signal distance of the vessel making the prize, in circumstances which might have justified the cap-

[1][Reported by Samuel Blatchford, Esq.]

turing vessel in demanding and expecting her assistance.

In admiralty.

BETTS, District Judge. The above vessels having been captured and condemned as prize, the appropriate proceedings were taken to determine the ultimate disposition of the prize proceeds. The right to all captures vests primarily in the government. Individuals derive no benefit from them, except by means of positive grant from the public authority. Hal. Law War, c. 30, §§ 3, 4; 2 Wildm. Int. Law, c. 9.

The statutory provisions governing the subject in the United States are very concise, but are in the most essential point deficient in the perspicuity and exactness desirable for practical and useful ends. The first regulation of the matter by congress was in the act of March 2, 1799, (1 Stat. 715, § 6,) and was this: "The produce of prizes taken by the ships of the United States" shall "be proportioned and distributed," and (article 9) "whenever one or more ships of the United States are in sight at the time of any one or more other ships, as aforesaid, are taking a prize or prizes, or being engaged with an enemy, and they shall all be so in sight when the enemy shall strike or surrender, they shall share equally," &c. The act of April 23, 1800, (2 Stat. 53, § 6, art. 7,) repeats substantially the last provision in the same language. The act of July 17, 1862, (12 Stat. 606, § 3, subd. 4,) varies the phraseology in respect to the position of the capturing vessels with relation to each other, and directs that "when one or more vessels of the navy shall be within signal distance of another making a prize, all shall share in the prize," &c.

After the condemnation of the two above-named prizes, the directions of the 4th section of the act of March 25, 1862, (12 Stat. 375,) supplied the governing criterion to be pursued. The prize commissioners in this case were directed by the court "to proceed to take and report the requisite evidence to the court, to the end that a final decree may determine what public ships of the United States are entitled to share in the prize and whether the prize was of superior, equal or inferior force to the vessel or vessels making the capture." The commissioners sent to the court, in effect, their opinion or judgment upon the interpretation and scope of the law, and also a report of the evidence collected by them, determining, in result, that only two vessels, the Restless and the Flag, were entitled to share in either of the prizes, and that those two vessels were entitled to share in both.

It is not material to the case to consider the point discussed on the argument on this application, whether it is within the province of the commissioners to report to the court their judgment or conclusions as to the effect of the testimony taken by them on the ques-

tions brought to their attention, because it is indubitably within the competency of the court to adjudge definitively the subject under inquiry, whether by way of exception to the decision of the commissioners, or as an original point arising out of the proofs.

The two prizes were captured whilst attempting to evade the blockade of the port of Charleston. There is no question as to the justness of the report of the commissioners as to the title of the Restless and the Flag to participate in the proceeds of the prize taken. The matter of difference and discussion between the counsel relates to the exclusion of the two other vessels from the class of share-takers.

The Housatonic and the Flambeau were two members of the blockading squadron, stationed off Charleston at the time the Anglia and the Scotia were captured as prize by the Restless and the Flag, and claims are interposed in their behalf before the prize commissioners as entitled to share in the distribution of the above prizes. The report of the commissioners is adverse to the claims of the Housatonic and the Flambeau. The counsel for the latter vessel except thereto, in substance, and appeal to the court against such decision, demanding that those vessels be decreed a title to share in the proceeds of the capture; the Housatonic because she was in sight of the prize when taken, and the Flambeau because she was within signal distance of both at the same time.

It will be needless now to debate the point of practice, whether under the special enactment of the 4th section of the act of March 25, 1862, (12 Stat. 375,) or according to the regular course of procedure in prize practice, there should be in the first instance a formal reference of the subject by the court to the prize commissioners to obtain their decision explicitly on the point, and then a review thereof before the court, by way of exceptions, as is the accustomed method in admiralty proceedings; because the substantial end to be attained, in either mode of practice, is effected by obtaining from the court a decision at large upon the facts and the law involved in the report of the prize commissioners. It may not be irrelevant to observe, however, that it would conduce to perspicuity and conciseness in this class of references to have them mutual between the government and the captors, and then that the judgment of the court in settlement of differences as to law or fact, arising between the parties on the reference, should be sought for, as in admiralty practice, by specific exceptions filed.

The contestant parties in the present issues are the representatives of the Restless and the Flag, the vessels which actually arrested the prizes, and those of the Housatonic and the Flambeau, vessels which composed in part, with the other two, the forces which invested Charleston, and were on their stations adjacent to that port when the prizes were taken. Accordingly, the broad proposition is raised for consideration in these proceedings, whether on the whole case reported. the Housatonic and the Flambeau are entitled to share in the proceeds of these prizes.

The prize vessels were both of them captured in Bull's bay. At that time the Flambeau was stationed at Maffit's channel, off Charleston, sixteen miles distant from the place of capture. No signals were seen from the capturing vessels by the Flambeau at the time of capture. Several witnesses express the opinion that the Flambeau was within signal distance of the two prizes, the Anglia and the Scotia; and other witnesses, equally well situated to judge, express the opinion that neither the Housatonic nor the Flambeau was in sight, or within signal distance of the prizes or of the captor vessels at the time of the capture. The Housatonic is not proved to have been nearer to the scene of the transaction than the Flambeau. No evidence is given by the Housatonic or the Flambeau of any act of co-operation performed by either of them, in the capture of the Anglia or the Scotia, other than being at their stations in the blockading squadron, at a distance of about sixteen miles; nor is it shown that either of them saw or was seen by the prize vessels or the captor vessels at the time of the capture. The opinion is given by some of the witnesses that the stations of the Housatonic and the Flambeau were within signal distance, but no evidence is given that either of those vessels was at the time in sight of the transaction, whether that view is measured from the position of the prizes or that of the vessels claiming to share in their proceeds. The opinions given by the witnesses in that respect are not the result of actual experience, but are conjectural and from estimate only; and the statutory provisions are not clear of ambiguity, whether both the capturing and captured vessels are not to be, throughout the transaction, mutually within sight or signal distance.

The entire capture being, by the principles of prize law, the property of the government, national vessels are not entitled to compensation out of the proceeds, except by express grant. Every vessel of a blockading squadron is bound to do all in its power in the service to be performed, and the law presumes that that obligation is fulfilled, unless the contrary be proved. The rule is different with respect to joint associations, or enterprises for war purposes, by privateers, or cruisers owned by individuals. Wheat. Mar. Capt. 287; Hal. Law War, c. 30, § 7. The doctrine of reasonable or equitable reward has, therefore no place in the inquiry before the court. It must be determined from the proofs before the court, whether the parties who claim an award of compensation out of the prizes, bring themselves within the terms and purpose of the

statutory enactments upon the subject. It is plain that the grant of shares in prize moneys to vessels which are not the direct captors, is one of limitation and restriction. The single fact, that a vessel is one of a common force squadron, or other association or denomination, does not constitute her a participant in the prize shares obtained by the separate members of the body or force. The claimant must show the additional qualification, that her position was in sight, or within signal distance of the occurrence out of which the taking of the prize was realized. If the designations of the vessel, in the several statutes, as being "in sight," or "within signal distance," are regarded as equivalent descriptions, their natural import would seem to be, that the vessel must be so situated as to be of her own accord and discretion, able to contribute direct assistance to the captors, or to comply with any signal call given to her, by determining the enemy from resistance, or by aiding, physically, ·in overcoming such resistance, and, accordingly, that the vessel or vessels to be aided must possess the means of communicating intelligent directions to the one whose aid is needed. To accomplish that, to any valuable end, it would appear that the acts of congress must contemplate that the vessels should be in view of each other, in order to correctly receive and respond to the notices or signals given. The provisions in the acts of 1799 and 1800 manifest the purpose of congress to limit the distribution of prize shares to such vessels of the navy only as are able to co-operate in promoting captures set on foot in sight of each other— that is, they must be, at least, in a condition to contribute immediate concert of action in the undertaking, if required by an associate vessel. In my opinion, the phrase, "within signal distance" employed in the act of 1862, in place of the prior expression, "within sight," may have been substituted as carrying within it a like import with the antecedent one, with, perhaps, a stronger significance, that proximity of position, in relation to the capturing vessels, must be such as to render intercommunication with the different consorts practicable and intelligible. The mere variation of phraseology, in a revision or re-enactment of statutory law, is not regarded as a revocation of the law, unless plainly so expressed. Sedg. St. & Const. Law, 428–430, and notes.

This construction of the law precludes the claim advanced in favor of the Housatonic and the Flambeau—that they stood, at the time, connected in this service, under the relation of a joint enterprise, and that each is entitled to share in its advantages, upon the principles governing that class of associations.

Under the provisions of the English prize acts, the donation of prize proceeds was made to the takers. The English law courts had regarded the grant as comprehending, beyond the actual captors, those, also, who constructively contributed to the taking of the prize. But Sir William Scott is inclined to concur in the more recent views of the tribunals, that the limitation of the prize law should not be extended but should be rather more closely restrained to the terms of the acts. The Vryheid, 2 C. Rob. Adm. 22. He refers to the case of The Mars, note, [see note at end of case,] as fixing the doctrine, that several public ships, occupied in a common purpose, that is, to enforce a blockade, do not share as joint captors in a prize made by one of the number when they are not present at the capture. The La Flore, 5 C. Rob. Adm. 268. The same interpretation of the rule is applied by American writers; and the only vessels held to be entitled to share in a prize are those which are in sight at the time of the capture, their presence lending a constructive assistance to the capture. Wheat. Mar. Capt. c. 9, art. 20; Hal. Law War, c. 30, §§ 6, 7. The mere physical ability to discern the prize, or even the seeing her from the mast-head not imparting the ability to contribute assistance in making the capture, does not seem to have been recognized, in any authoritative case, as evidence of constructive assistance to another ship in effecting a capture. Upt. Mar. Warf. & Pr. (2d Ed.) 204–220.

The provision in the act of congress of July 17, 1862, (12 Stat. 606, § 3, subd. 4,) that, "when one or more vessels of the navy shall be within signal distance of another making a prize, all shall share in the prize," &c., affords no indication that the established rules in regard to joint captors in prize cases are intended to be changed, or that investments of enemy ports by fleets or squadrons or united navy forces, are to be deemed joint expeditions or enterprises, and subject to the regulations applicable to naval services of that denomination. It will not be implied, constructively, that assistance has been rendered by a ship not palpably contributing to the capture of another, unless she was within signal distance of the one making the prize, in circumstances which might have justified the capturing ship in demanding and expecting her assistance, and the prize vessel in apprehending her interference. These facts must be affirmatively proved by the vessel claiming to share in the proceeds of the prize property taken.

I think that, in the present instance, the claims of the Housatonic and the Flambeau have been correctly disallowed by the prize commissioners.

[NOTE. A note to The Vryheid, 2 C. Rob. Adm. 22, refers to the case of The Mars as follows: "Lords, 1760. This was a case of a French ship taken by one of three king's ships, which, being apprized of the design of the enemy to escape from Port au Prince, had taken their station at different outlets to intercept them. The capture was made by one ship. A claim was given on behalf of the other two to share as joint captors, though not present at the capture, but it was rejected."]